

ORIGINAL

RECEIVED IN CLERK'S OFFICE
U.S.D.C. Atlanta

AUG - 1 2003

Luther D Thomas, Clerk
Deputy Clerk

**THE UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C.

AUG 0 6 2003

LUTHER D. THOMAS, CLERK
By:
Deputy Clerk

|  |  |  |
|---|---|---|
| Commodity Futures Trading Commission, | ) | CIVIL ACTION NO.1:02 CV 2394 |
| Plaintiff, | ) | Judge: Hon. Orinda D. Evans |
| v. | ) | |
| Global Financial Consulting, Inc., Wook Hyun Kim, and Chang H. Lee, | ) | |
| Defendants. | ) | |

**CONSENT ORDER OF PERMANENT INJUNCTION**
**AND OTHER EQUITABLE RELIEF**
**AGAINST DEFENDANTS WOOK HYUN KIM AND CHANG H. LEE, INDIVIDUALLY**
**AND D/B/A GLOBAL FINANCIAL CONSULTING, INC.**

**I.**
**INTRODUCTION**

1.      On August 28, 2002, Plaintiff Commodity Futures Trading Commission (the "Commission") filed a Complaint against Defendants Wook Hyun Kim ("Kim") and Chang H. Lee ("Lee"), individually and doing business as Global Financial Consulting, Inc., seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 *et seq.* (2001) and regulations promulgated thereunder, 17 C.F.R. §§ *et seq.* (2002).



2.      To effect settlement of the matters alleged in the Complaint without a trial on the merits, Defendants Kim and Lee, along with the Commission, consent to the entry of this Consent Order of Permanent Injunction and other Equitable Relief ("Consent Order"). Defendants Kim and Lee also: (1) admit both personal and subject matter jurisdiction of this Court in this action; (2) admit that venue properly lies with this Court; and (3) generally waive the entry of findings of fact and conclusions of law in this action pursuant to Rule 52 of the Federal Rules of Civil Procedure, except as provided in Part II below.

3.      By consenting to the entry of this Order, Defendants Kim and Lee neither admit nor deny the allegations of the Complaint and the Findings of Fact and Conclusions of Law contained in this Consent Order, except as to jurisdiction and venue. However, Defendants Kim and Lee agree and intend that the allegations of the Complaint and all of the Findings of Fact made by this Court and contained in Part II of this Consent Order shall be taken as true and correct and be given preclusive effect without further proof for the purpose of any subsequent bankruptcy proceeding filed by, or on behalf of, or against Defendant Kim and/or Lee, for the purpose of determining whether Defendant Kim and/or Lee's restitution obligation and/or other payments ordered herein are excepted from discharge. Defendant Kim and Defendant Lee also shall provide immediate notice of any bankruptcy filed by, or on behalf of, or against either of them.

4.      By this language, Defendants Kim and Lee agree that neither they nor any employees, agents or representatives acting under either of their authority or control shall take any action or make any public statements denying, directly or indirectly, any allegation in the Complaint or creating, or tending to create, the impression that the Complaint is without factual basis; provided, however, that nothing in this provision affects Defendants Kim and/or Lee's (i)

2

testimonial obligations, or (ii) their right to take legal positions in other proceedings to which the Commission is not a party.  Defendants Kim and Lee will undertake all steps necessary to ensure that all of their agents and employees understand and comply with this agreement.

5.      Defendants Kim and Lee waive: (1) all claims that either of them may possess under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1994), as amended by Pub. L. No. 104-121. §§ 231-32, 110 Stat. 862-63, and Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1, et seq. (2002), relating to or arising from this action and any right under EAJA to seek costs, fees and other expenses relating to or arising from this proceeding; (2) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (3) all rights of appeal from this Consent Order.

6.      The parties hereto also consent to the continued jurisdiction of the Court for the purpose of enforcing the terms and conditions of this Consent Order and for any other purposes relevant to this case.

7.      Defendants Kim and Lee further affirm that they have read the Consent Order and agree to entry of this Consent Order voluntarily, and that no promise or threat of any kind have been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce either of them to consent to this Consent Order, other than as set forth specifically herein.

## II.
## FINDINGS OF FACT

### A.  General

8.      The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason to delay.  The Court therefore directs the entry of findings of fact, conclusions of law, a permanent injunction and ancillary equitable relief, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2001), as set forth herein.

9.      This Court has subject matter jurisdiction over this action and the allegations in the Complaint pursuant to Section 6c of the Act.

10.     This Court has personal jurisdiction over Defendants Kim and Lee and Defendants Kim and Lee consent to the Court's jurisdiction over each of them.

11.     The Commission and Defendants Kim and Lee have agreed that this Court shall retain jurisdiction over each of them for the purpose of enforcing the terms of this Consent Order.

### B.  Parties

12.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged with the responsibility for administering and enforcing the provisions of the Act and Regulations promulgated under it.

13.     Defendant Wook Hyun Kim, whose address is 504 Two Iron Way, Kennesaw, Georgia, 30144, has never been registered with the Commission in any capacity.  Kim was the sole owner of Global Financial Consulting ("GFC") and also personally solicited customers to invest with GFC.  On the GFC incorporation documents, filed in the state of Georgia, Kim is listed as the registered agent, the only person on the Board of Directors, the incorporator and the applicant seeking incorporation of the company.

14.   <u>Defendant Chang H. Lee</u> resides at 620 East Lake Drive, Marietta, Georgia,
30062. As the "financial consultant" for GFC, Lee managed customer investments and solicited
new customers to invest with GFC.  Lee has never been registered with the Commission in any
capacity.

**C.  Factual Background**

15.   From at least June 2001 to August 2002, Defendants Kim and Lee solicited
customers to purchase illegal futures contracts through GFC by making false representations,
including guaranteeing profits.

16.   Defendants Kim and Lee did not inform prospective customers that they were
purchasing illegal foreign currency futures contracts.  In fact, Defendants Kim and Lee never
articulated to customers the specific characteristics of the "foreign currency investments" in
which GFC supposedly was investing on behalf of its customers.  Instead, through solicitation
materials, Defendants Kim and Lee impliedly and falsely represented to prospective customers
that their funds would be used to trade foreign currencies in the "spot" or "forex" market as a
means of profiting on price fluctuations.  However, Defendants were actually engaging in the
trading of illegal off-exchange futures contracts.

17.   Defendants Kim and Lee also falsely told customers and prospective customers
that GFC traded through its "parent company,"" Forex Capital Markets LLC ("FXCM"), a
registered futures commission merchant ("FCM") located in New York, New York.  However,
there was no such relation between GFC and FXCM.

18.     Defendants Kim and Lee solicited potential customers to purchase these illegal off-exchange futures contracts in a fraudulent manner.  Defendants Kim and Lee assured customers, both in writing and verbally, that they would not experience a loss on any of the money they invested with GFC.

19.     For example, solicitation materials provided by Defendants Kim and Lee stated that customers' "invested principal is always guaranteed by GFC."  In addition, Defendants Kim and Lee informed customers that their funds were deposited into "triple-A-rated financial institutions" which are "FDIC insured," and that all GFC client funds were "legally protected and held in escrow, so as to "protect[] clients against bankruptcy as a result of poor management or trading decisions."

20.     Defendants Kim and Lee guaranteed that GFC customers would make profits ranging from 20% to 80% per annum.  In fact, GFC stated in a customer contract that profits of at least 30% were "*guaranteed* no matter what the market condition is," and on other literature GFC guaranteed customers 20% profits on their investment.

21.     Defendants concentrated their solicitation efforts on acquaintances, as well as people living in and around the city of Atlanta.  Defendant Kim solicited people who attended Kim's former church and Defendant Lee solicited former colleagues.

### 1.  Customer Funds and Purported Trading

22.     Upon investing, Defendants Kim and Lee provided and had customers sign a "Customer Agreement" document.  The document stated that GFC would "act as broker" for customers' "investment and/or trading in foreign exchange contracts."

23.     Defendants Kim and Lee offered GFC customers "six month contracts" where the customers' investment was managed by GFC with guaranteed returns.

24. Defendant Kim requested that customers provide their GFC investment funds to him either in the form of cash or by check made payable to him. One GFC customer invested $99,000 and paid Kim the entire amount over two months in cash.

25. Defendants Kim and Lee falsely informed customers in writing and verbally that upon receipt, GFC held customers' funds at Citibank and/or Fleet Bank, and then traded customers' funds through FXCM – a firm which GFC falsely claims is its "parent company."

26. Defendants Kim and Lee solicited and accepted funds from customers months before opening a trading account.

27. After receiving and supposedly investing customer funds, GFC maintained that its customers were earning consistent profits. Defendants Kim and Lee sent customers statements reflecting consistent growth. GFC's account statements made no reference to FXCM or any other firm.

28. For instance, a GFC customer received statements showing consistent returns of almost 7.0% per month (or around 80% per annum), even for the months before Defendants Kim and Lee actually opened a trading account at FXCM.

29. To further convince this particular customer that he was earning consistent profits, Defendants Kim and Lee sent this customer checks on a fairly consistent basis, claiming such funds were returns on the customer's GFC investment.

30. Defendants Kim and Lee also guaranteed this customer that, apart from these monthly returns, he was earning 80% annual profit on a separate account GFC established for him.

31.     This customer experienced a net loss of approximately 30% on his GFC investment, instead of the 80% profit he was guaranteed.  Other GFC customers were unaware of the trading losses incurred by GFC and continued to receive periodic statements showing consistent profitable results.

## 2. Defendant Kim Conducted Limited Trading in His Own Name and Not On Behalf of Customers

32.     Defendant Kim conducted some trading of futures contracts through an account in his name at FXCM.  Kim never disclosed to FXCM that he had customers, or that he operated any kind of investment firm.  Defendants Kim and Lee never opened and traded any GFC customer accounts at FXCM.

33.     FXCM never heard of GFC, nor did it maintain any kind of business relation or affiliation with it.  In addition, the records showed that Kim only traded $106,000 at FXCM, while GFC took in approximately $167,000 from twelve customers.

## 3. Defendants Kim and Lee's Purported Foreign Currency Transactions Are Illegal Futures Contracts

34.     GFC acted as the counter-party to all of the transactions entered into by the customers of GFC.

35.     GFC purported to offer contracts in "spot" foreign currency to retail investors, which in reality are illegal off-exchange futures contracts.  The foreign currency contracts that GFC offered and sold were futures contracts because they had the characteristics indicative of a futures contract.

36.     The contracts represented contracts for future delivery of foreign currencies that are cash settled in US dollars.  The prices are established at the time the contracts are initiated, and may be settled through offset, cancellation, cash settlement or other means to avoid delivery.

37.     Defendants marketed the GFC contracts to the general public as a means to speculate and profit from anticipated price fluctuations in the markets for these currencies.

38.     Unlike parties to a spot transaction, the customers who purchased these futures contracts had no commercial need for the foreign currency. The customers did not anticipate taking – and did not take – delivery of the foreign currencies they purchased as a consequence of these investments.

39.     GFC did not conduct their foreign currency futures transaction on or subject to the rules of a board of trade that has been designated or registered by the Commission as a contract market or derivatives transaction execution facility for such commodity.

40.     GFC did not execute or consummate their contracts by or through a contract market. The foreign currency transactions conducted by GFC were not evidenced by any writing that shows the underlying commodity, its price and the terms of delivery. As a result, the contracts are illegal futures contracts.

### Customers Due Principal Investment

41.     As previously stated, Defendants Kim and Lee solicited and obtained money from at least twelve individual customers. On or about the filing of this case, Defendants Lee and Kim, on their own accord, paid six customers back their respective principal investments, and partially paid back another customer. GFC customers are still owed a total of $58,740 (see Attachment A).

# III.
## CONCLUSIONS OF LAW

42.     From at least June 2001 to August 2002, Defendants Kim and Lee offered to enter into, entered into, executed, confirmed the execution of, or conducted an office or business in the state of Georgia for the purpose of soliciting, accepting any order for, or otherwise dealing in transactions in, or in connection with, a contact for the purchase or sale of a commodity for future delivery when: (a) such transactions were not conducted on or subject to the rules of a board of trade which has been designated by the Commission as a contract market or derivatives transaction execution facility for such commodity; (b) such contracts were not executed or consummated by or through a contract market; and (c) such contracts were not evidenced by a record in writing which showed the property covered, its price, and the terms of delivery, in violation of Section 4(a) of the Act, as amended by the Commodity Futures Modernization Act (CFMA), 7 U.S.C. § 6(a).

43.     During the relevant time period, Defendants Kim and Lee, in or in connection with the orders to make, or the making of, contracts of sale of commodities for future deliver, made or to be made, for or on behalf of any other persons, where such contracts for future delivery were or could be used for the purposes set forth in Section 4b(a) of the Act, 7 U.S.C. §6b(a) (2001), have cheated or defrauded or attempted to cheat or defraud investors or prospective investors and willfully deceived or attempted to deceive investors or prospective investors by, among other things: (1) explicitly guaranteeing profits and misrepresenting profit potential and risks associated with the illegal foreign currency futures contracts they offered and purported to sell to members of the public; (2) luring customers by falsely claiming that FXCM was the parent company of GFC, and that GFC held customer funds at Citibank and/or Fleet Bank and thus were "FDIC insured"; (3) misrepresenting that clients funds were held in escrow

accounts, when no such account existed; and (4) falsely telling customers both verbally and in writing that their accounts were earning money, when in fact, their account(s) were losing money.

44.      Section 2(c)(2)(B)(i) and (ii) of the Act provides that the Commission shall have jurisdiction over an agreement, contract or transaction in foreign currency that is a sale of a commodity for future delivery, so long as the contract is "offered to, or entered into with, a person that is not an eligible contract participant," unless that counter-party is a regulated entity, as enumerated in the CFMA. Here, neither GFC, Defendant Kim nor Defendant Lee were a proper counter-party for retail foreign currency transactions, and therefore, the Commission has jurisdiction over the transaction in retail foreign currency alleged herein.

45.      Section 1a(12)(A)(xi) of the Act, as amended by the CFMA, 7 U.S.C. §1a(12)(A)(xi), defines an eligible contract participant as an individual who has total assets in excess of: (a) $10 million; or (b) $5 million and who enters the transaction to manage the risk associated with an asset owned or a liability incurred, or reasonably likely to be owned or incurred. At least some, if not all, of the foreign currency futures transactions alleged herein were offered to or entered into with persons who were not eligible contract participants, and as such, the Commission has jurisdiction over such GFC contracts.

**IV.**
**ORDER FOR PERMANENT INJUNCTION**

NOW THEREFORE, IT IS ORDERED THAT:

46.    Defendants Kim and Lee are permanently restrained, enjoined and prohibited

from directly or indirectly:

        a.    Cheating, defrauding or willfully deceiving, or attempting to cheat, defraud or deceive such other person in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made or to be made, for or on behalf of any other person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof, in violation of Section 4b(a)(i) and (iii) of the Commodity Exchange Act ("the Act"), 7 U.S.C. § 6b(a)(i) and (iii);

        b.    Offering to enter into, entering into, executing, confirming the execution of, or conducting any office or business for the purpose of soliciting and/or accepting any orders for, or otherwise dealing in transactions in or in connection with, contracts for the purchase or sale of a commodity for future delivery, or options thereon in violation of Section 4(a) of the Act. 7 U.S.C. § 6(a), when:
            (i) such transactions have not been conducted on or subject to the rules of a board of trade which has been designated by the Commission as a "contract market" for such commodity;  and
            (ii) such contracts have not been executed or consummated by or through a member of such contract market;

        c.    Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

        d.    Engaging in, controlling or directing the trading for any commodity interest account for or on behalf of any person or entity, whether by power of attorney or otherwise; and

        e.    Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity

requiring such registration or exemption from registration, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent, officer or employee of any person registered, exempted from registration or required to be registered with the Commission, unless such exemption is pursuant to Commission Regulation 4.14(a)(9).

47.      The injunctive provisions of this Consent Order shall be binding upon Defendants Kim and Lee, upon any person insofar as he or she is acting in the capacity of officer, agent, servant or employee of Defendant Kim and/or Lee, and upon any person who receives actual notice of this Consent Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Defendant Kim and/or Lee.

## V.
## ORDER FOR OTHER EQUITABLE RELIEF

IT IS FURTHER ORDERED THAT:

48.      RESTITUTION:  Defendants Kim and Lee shall pay a total of $58,740 in restitution to customers.  Of that amount, Defendant Kim is ordered to pay $34,370 (Thirty-four thousand, three hundred and seventy dollars) and Defendant Lee is ordered to pay $24,370 (Twenty-four thousand, three hundred and seventy dollars).  Defendants Kim and Lee shall be severally, not jointly, liable for the payment of their respective restitution obligations.

49.      PAYMENT OF RESTITUTION:  Payment of restitution shall be made as follows:

(a) Within 10 calendar days after entry of this Consent Order,

(1) Defendant Kim shall pay $370.

(2) Defendant Lee shall pay $370.

(i) Payment shall be made by electronic funds transfer, U.S. postal money order, certified check, bank cashiers check, or bank money order.

(ii) Payment shall be made shall be made to Daniel A. Driscoll, Esq., Executive Vice President, Chief Compliance Officer, or his successor, at the following address:  National Futures Association, 200 West Madison Street, Chicago, Illinois 60606, who shall distribute the funds to the investors as described in section (c) below.

(b)    Thereafter, on or before the 20th day of each month,

(1) Defendant Kim shall pay $1,000 for 34 months; and

(2) Defendant Lee shall pay $1,000 for 24 months.

(i) Payment shall be made by electronic funds transfer, U.S. postal money order, certified check, bank cashiers check, or bank money order.

(ii) Payment shall be made shall be made to Daniel A. Driscoll, Esq., Executive Vice President, Chief Compliance Officer, or his successor, at the following address:  National Futures Association, 200 West Madison Street, Chicago, Illinois 60606, who shall distribute the funds to the victims as described in section (c) below.

(c)    The National Futures Association shall be designated as the Monitor for a period beginning with the date of entry of this Consent Order and

continuing until distribution of the last payment called for by this Consent Order. As Monitor, the National Futures Association shall distribute restitution payments every third month according to the percentage interests set forth in Attachment B.

The Commission will provide the National Futures Association with the addresses of these six individuals.

50.   CIVIL MONETARY PENALTY:

(a) Defendant Kim

(1) The default civil monetary penalty of $240,000 becomes immediately due and owing upon a failure by Defendant Kim to substantially comply with any of the payment terms contained in paragraph 49 of this Consent Order that pertain to him.

(i) In the event that Defendant Kim fails to substantially comply with any of the payment terms contained in paragraph 49 of this Consent Order that pertain to him, Defendant Kim shall pay the $240,000 default civil monetary penalty by electronic funds transfer, or by U.S. postal money order, certified check, bank cashiers check, or bank money order, made payable to the Commodity Futures Trading Commission, and sent to Dennese Posey, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW Washington, D.C. 20581, under cover of a letter that identifies

Defendant Kim, as well as the name and docket number of the proceeding.

(2) If Defendant Kim has substantially complied with the provisions of paragraph 49 of this Consent Order that pertain to him and can supply evidence of good faith inability to comply any further, he may petition the Court for a determination as to whether the default civil monetary penalty should be paid.

(b)  Defendant Lee

(1) The default civil monetary penalty of $240,000 becomes immediately due and owing upon a failure by Defendant Lee to substantially comply with any of the payment terms contained in paragraph 49 of this Consent Order that pertain to him.

(i)  In the event that Defendant Lee fails to substantially comply with any of the payment terms contained in paragraph 49 of this Consent Order that pertain to him, Defendant Lee shall pay the $240,000 default civil monetary penalty by electronic funds transfer, or by U.S. postal money order, certified check, bank cashiers check, or bank money order, made payable to the Commodity Futures Trading Commission, and sent to Dennese Posey, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW Washington, D.C. 20581, under cover of a letter that identifies

Defendant Lee, as well as the name and docket number of the proceeding.

(2) If Defendant Lee has substantially complied with the provisions of paragraph 49 of this Consent Order that pertain to him and can supply evidence of good faith inability to comply any further, he may petition the Court for a determination as to whether the default civil monetary penalty should be paid.

## VI.
## MISCELLANEOUS PROVISIONS

51.    ENTIRE AGREEMENT AND AMENDMENTS:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

52.    WAIVER:  The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

53.    SUCCESSORS AND ASSIGNS:  This Consent Order shall inure to the benefit of and be binding upon the successors, assigns, heirs, beneficiaries and administrators of the parties hereto.

54.    ACKNOWLEDGEMENTS:  Upon being served with copies of this Consent Order after entry by the Court, Defendants Kim and Lee shall sign acknowledgements of such

17

service and serve such acknowledgments on this Court and the Commission within seven (7)

calendar days.

55. __INVALIDATION:__ If any provision of this Consent Order, or the application of

any provisions or circumstances is held invalid, the remainder of the Consent Order and the

application of the provision to any other person or circumstance shall not be effected by the

holding.

56. __JURISDICTION:__ This Court shall retain jurisdiction of this cause to assure

compliance with this Consent Order and for all other purposes related to this action.

ENTERED THIS __6__ of __August__, 2003.

 

Hon. Orinda D. Evans
United States District Court

 

Consented to and approved for entry by:

_LAEL E. CAMPBELL_

Katrina Poplawski, Attorney for the Plaintiff
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581
Phone  (202) 418-5351
Fax     (202) 418-5523
Email:  kpoplawski@cftc.gov

Joseph Alonso, Attorney for Defendants Kim and Lee
Brock, Clay, Calhoun, Wilson & Rogers, PC
49 Atlanta Street
Marietta, GA 30060
Phone  (770) 422-1776
Fax     (770) 426-6155;  inside Georgia (800) 971-3555
jalonso@bcwr.com

Defendant Wook Kim

Defendant Chang H. Lee

# ATTACHMENT A

Attachment A

## GFC CUSTOMERS OWED MONEY

| | |
|---|---|
| Se Chol Chang | $ 39,240 |
| Jung Ah Kim | $  2,000 |
| Nien-Tsu Chen | $ 10,000 |
| Sonya Bradley | $   1,000 |
| Leon Ramessar | $   5,000 |
| Kristen Kim | $   1,500 |

**Total:**   $  58,740

# ATTACHMENT B

Attachment B

## DISTRIBUTION OF RESTITUTION TO CUSTOMERS
## BY NFA

| | |
|---|---|
| Se Chol Chang | 66.80% |
| Jung Ah Kim | 3.40% |
| Nien-Tsu Chen | 17.02% |
| Sonya Bradley | 1.71% |
| Leon Ramessar | 8.51% |
| Kristen Kim | 2.56% |

**Total:** | 100% of $ 58,740 |